UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MICHAEL MARCAVAGE, REPENT AMERICA,
an unincorporated association, by and through its
Director, MICHAEL MARCAVAGE, SHAWN
HOLES and DON KARNS,

     *Plaintiffs,*

   -against-

THE CITY OF NEW YORK, POLICE OFFICER
JASON HARPER, and POLICE CAPTAIN DAVID
EHRENBERG in their individual and official
capacities,

     *Defendants.*

-------------------------------------------------------------X

**Civil Action No.**

11 CV 9482

JUDGE SWAIN

## SUMMONS IN A CIVIL ACTION

TO: The City of New York  Captain David Ehrenberg and
  100 Church Street   and Police Officer Jason Harper
  New York, NY 10007  New York City Police Department, 26th Precinct
         520 West 126th Street
         New York, New York 10027

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or
60 days if you are the United States or a United States agency, or an officer or employee of the
United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an
answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil
Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose
name and address are:

Law Offices of John P. Margand, 670 White Plains Road, Suite 322,
Scarsdale, NY 10583  914-723-1700 Fax 914-723-1788

If you fail to respond, judgment by default will be entered against you for the relief demanded in
the complaint. You also must file your answer or motion with the court.

        RUBY J. KRAJICK
        *CLERK OF COURT*

Date:  DEC 2 3 2011

        *Signature of Clerk or Deputy Clerk*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

11 CV 9482

-------------------------------------------------------------x

MICHAEL MARCAVAGE,  REPENT AMERICA,
an unincorporated association, by and  through its
Director, MICHAEL MARCAVAGE, SHAWN
HOLES and DON KARNS,

**COMPLAINT**

*Plaintiffs,*

-against-

Case No.

THE CITY OF NEW YORK, POLICE OFFICER
JASON HARPER, and POLICE CAPTAIN DAVID
EHRENBERG in their individual and official
capacities,

*Defendants.*

-------------------------------------------------------------x

Plaintiffs, Michael Marcavage and Repent America, by and through their attorney, allege

as follows:

### Introduction

1.      Plaintiffs seek relief pursuant to 42 U.S.C. § 1983 for redress of the

deprivation under color of state law of rights secured to them by the First and Fourteenth

Amendments to the United States Constitution and NY Const. Art. I, §§ 3, 8 and 9.

2.      Plaintiffs are entitled to immediate injunctive and declaratory relief

preventing Defendants from enforcing an unconstitutional Code that violates Plaintiffs'

fundamental rights under the Constitutions of the United States and New York.

### Jurisdiction and Venue

3.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and

1343, as it is an action seeking redress under the laws and statutes of the United States for

1

the deprivation of rights secured by the Constitution and laws of the United States.

4.     This Court has jurisdiction to enter a declaratory judgment in favor of the Plaintiffs under 28 U.S.C. §§ 2201-2202.

5.     Venue properly lies in the Southern District of New York under 28 U.S.C. § 1391(b), as the Defendants reside within this District within the State of New York, and a substantial part of the events giving rise to this action occurred within this District.

## Parties

6.     Plaintiff Michael Marcavage is an adult citizen and resident of the Commonwealth of Pennsylvania.

7.     Plaintiff Repent America is an unincorporated association located in the State of Pennsylvania and having its principle business address at P.O. Box 30000, Philadelphia, Pennsylvania 19103.

8.     Plaintiff Shawn Holes is an adult citizen and resident of the State of Idaho.

9.     Plaintiff Don Karns is an adult citizen and resident of the Commonwealth of Virginia.

10.     Defendant City of New York is a body politic and corporate created and existing under the laws of the State of New York. In all respects set forth in this Complaint, Defendant City of New York acted under color of the law of the State of New York.

11.     Defendant Police Officer Jason Harper was assigned to the Community Affairs Department of the 26th Precinct on April 13, 2011. He is sued in his individual and official capacities. In all respects set forth in this Complaint, Defendant Harper acted or failed to act under color of the law of the State of New York.

12.    Defendant Police Captain David Ehrenberg was assigned to the 26th Precinct on April 13, 2011 and thereafter. He is sued in his individual and official capacities. In all respects set forth in this Complaint, Defendant Ehrenberg acted or failed to act under color of the law of the State of New York.

## Factual Allegations

13.    Plaintiff Michael Marcavage is the director of Repent America, an evangelistic and Christian liberties organization based in Philadelphia, Pennsylvania. Repent America, by and through its director and members, regularly engages in free speech activities on sidewalks and streets as an expression of its members' sincerely-held religious beliefs.

14.    Plaintiff Michael Marcavage's sincerely-held religious beliefs compel him to proclaim the Gospel of Jesus Christ and preach the Word of God to the masses.

15.    Plaintiff Shawn Holes' sincerely-held religious beliefs compel him to proclaim the Gospel of Jesus Christ and preach the Word of God to the masses.

16.    Plaintiff Don Karns' sincerely-held religious beliefs compel him to proclaim the Gospel of Jesus Christ and preach the Word of God to the masses.

17.    Plaintiffs Marcavage, Holes and Karns traveled to New York City to engage in free speech activities on April 13, 2011 as an expression of their sincerely-held religious beliefs.

18.    On April 13, 2011, Plaintiffs engaged in free speech and free exercise activities by proclaiming their religious beliefs to passersby on the sidewalks and streets of the City of New York on the corner of Broadway and W. 116th Avenue.

19.    Because of the ambient noise and commotion associated with the traffic at this busy location, Plaintiff Karns employed a small amplification device an Aker MR2800, a very small headset, commonly used by tour guides and for teaching in classrooms, and indispensable for conducting effective public speech on a busy New York City sidewalk to facilitate the communication of their message to passersby. An audiovisual recording demonstrating the noisy environment that the plaintiffs were attempting to speak, which includes the sound of honking horns, hydraulics from buses, police sirens and other loud urban noise is attached as **Exhibit A-1**.

20.    At all times Plaintiffs acted in an orderly manner and kept their sound at a reasonable volume appropriate to the surroundings and circumstances.

21.    As Plaintiffs were engaging in free speech and free exercise activities on the public sidewalk in a commercial zone of the City of New York, they were approached by Defendant Jason Harper, a police officer of the City of New York Community Affairs Department of the 26th Precinct.

22.    Defendant Police Office Harper stated that they could not use amplification without a permit, and that the plaintiffs must cease and desist using his amplification device.

23.    Upon being told to cease and desist using his amplification device, Plaintiff Marcavage cited the U.S. Supreme Court decision in *Saia v. New York*, 334 U.S. 558.

24.    Officer Harper responded by forbidding the usage of amplification under the threat of summons/citation.

25.    But for the New York City Administrative Code (new) Chapter 1 §10-108 (hereinafter the "Code") and the threat of  enforcement by Officer Harper, plaintiffs would still be engaging in this free speech and free exercise activities on the public sidewalk in New York City.

26. New York New York City Administrative Code (new) Chapter 1 §10-108 "Regulation of Sound Devices or Apparatus" (hereinafter"the Code") states as follows:

> **d. Use and operation of sound devices and apparatus for other than commercial and business advertising purposes; permit required**. It shall be unlawful for any person to use or operate any sound device or apparatus, in, on, near or adjacent to any public street, park or place, unless such person shall have first obtained a permit to be issued by the police commissioner in the manner hereinafter prescribed and unless the police commissioner shall comply with the provisions of this section and the terms and conditions prescribed in such permit.
> **e. Applications.** Each applicant for a permit to use or operate a sound device or apparatus in, on, near or adjacent to any public street, park or place shall file a written application with the police commissioner, at the police precinct covering the area in which such sound device or apparatus is to be used or operated, at least five days prior to the date upon which such sound device or apparatus is to be used or operated. Such application shall describe the specific location in which such sound device or apparatus is proposed to be used or operated, the day and the hour or hours during which it is proposed to be used or operated, the volume of sound which is proposed to be used measured by decibels or by any other efficient method of measuring sound, and such other pertinent information as the police commissioner may deem necessary to enable the police commissioner to carry out the provisions of this section.
> **f. Issuance of permit; terms**. The police commissioner shall not deny a permit for any specific time, location or use, to any applicant who complies with the provisions of this section, except for one or more of the reasons specified in subdivision g hereof or for non-payment of the fee prescribed in subdivision h hereof, or to prevent overlapping in the granting of permits, provided, however, that a permit issued for multiple days shall be issued only for multiple days within a period of five consecutive calendar days and only at the same location. Each permit issued pursuant to this section shall describe the specific location in which such sound device or apparatus may be used or operated thereunder, the exact period of time for which such apparatus or device may be operated in such location, the maximum volume of sound which may be employed in such use or operation and such other terms and conditions as may be

necessary, for the purpose of securing the health, safety, comfort, convenience and peaceful enjoyment by the people of their right to use the public streets, parks or places for street, park or other public purposes, protecting the health, welfare and safety of the inhabitants of the city, and securing the peace, quiet and comfort of the neighboring inhabitants.

**g. Special restrictions.** The police commissioner shall not issue any permit for the use of a sound device or apparatus:

1. In any location within five hundred feet of a school, courthouse or church, during the hours of school, court or worship, respectively, or within five hundred feet of any hospital or similar institution;

2. In any location where the commissioner, upon investigation, shall determine that the conditions of vehicular or pedestrian traffic or both are such that the use of such a device or apparatus will constitute a threat to the safety of pedestrians or vehicular operators;

3. In any location where the commissioner, upon investigation, shall determine that conditions of overcrowding or of street repair or other physical conditions are such that the use of a sound device or apparatus will deprive the public of the right to the safe, comfortable, convenient and peaceful enjoyment of any public street, park or place for street, park or other public purposes, or will constitute a threat to the safety of pedestrians or vehicle operators;

4. In or on any vehicle or other device while it is in transit;

5. Between the hours of ten p.m. and nine a.m.; or

6. Between the hours of eight p.m. or sunset, whichever is later, and nine a.m. on weekdays and between the hours of eight p.m. or sunset, whichever is later, and ten a.m. on weekends and public holidays, in any location within fifty feet of any building that is lawfully occupied for residential use. The distance of fifty feet shall be measured in a straight line from the point on the exterior wall of such building nearest to any point in the location for which the permit is sought.

**h. Fees.** Each applicant for a single-day permit issued under the provisions of this section shall pay a fee of forty-five dollars for the use of each such sound device or apparatus and each applicant for a multiple-day permit issued under the provisions of this section shall pay a fee of forty-five dollars for the use of each such sound device or apparatus for the first day and a fee of five dollars for the use of each such sound device or apparatus for each additional day up to a maximum of four additional days, provided, however, that permits for the use of such sound devices or apparatus shall be issued to any bureau, commission, board or department of the United States government, the state of New York, and the city of New York, without fee.

**i. Exceptions.** The provisions of this section shall not apply to the use or operation of any sound device or apparatus by any church or synagogue on or within its own premises, in connection with the religious rites or ceremonies of such church or synagogue.

**j. Violations.** 1. Any person who shall violate any provision of this

section, upon conviction thereof, shall be punished by a fine of not more than one hundred dollars or imprisonment for thirty days, or both.

2. Any person who shall violate any provision of this section, any rule promulgated pursuant thereto or the terms of a permit issued pursuant to subdivision f of this section, shall be liable for a civil penalty recoverable in a civil action brought in the name of the police commissioner or the commissioner of environmental protection or in a proceeding before the environmental control board in an amount of two hundred fifty dollars for the first violation, five hundred dollars for the second violation and seven hundred fifty dollars for the third and each subsequent violation. However, any person who commits a fourth and any subsequent violation within a period of six months shall be classified as a persistent violator and shall be liable for a civil penalty of one thousand dollars for each such violation.

**k. Rules.** The police commissioner shall have the power to make such rules as may be necessary to carry out the provisions of this section.

**l.** The police department and the department of environmental protection shall have the authority to enforce the provisions of this section.

27.     At no time did Defendant Harper suggest that Plaintiffs comply with the code by reducing the volume of the amplification device, nor did he request that they do so.

28.     Plaintiffs complied with Defendant Harper's order to cease and desist use of the amplification device in communicating their message. An audiovisual recording of the Plaintiffs' encounter with the Defendant Harper is attached as **Exhibit A-2**. A transcript of the recording is attached as **Exhibit B**.

29.     After complying with Defendant Harper's order, Plaintiffs wrote to Captain David Ehrenberg of the 26th Precinct on April 13, 2011 to relate to him the events that had transpired and to seek assistance in regaining his rights to communicate his message effectively by using the amplification device.

30.     Plaintiffs' attorney wrote to Captain Ehrenberg on August 13, 2011. (Letters of the Plaintiffs and Plaintiff's attorney are attached as **Exhibit C.**

31.     Captain David Ehrenberg has failed to respond.

32.    By directly threatening plaintiffs with arrest and/or citation for allegedly violating the Code, Defendant Harper coerced plaintiffs to abandon their use of the amplification device to express their sincerely-held religious beliefs on the corner of Broadway and W. 116th Avenue in Manhattan in the City of New York on April 13, 2011.

33.    Due to the ambient noise and commotion plaintiffs were precluded from effectively communicating their message on April 13, 2011.

34.    Plaintiffs intend to revisit the corner of Broadway and W. 116th Avenue in Manhattan and other places in the City of New York for the purpose of proclaiming their sincerely-held religious beliefs to passersby with the aid of sound amplification devices.

35.    The permitting fees are costly, and become especially extravagant when one desires to speak at varying locations throughout a week (for instance, speaking at a different location for 5 days would require a payment of $225 -- $45 for each location -- and would entail obtaining 5 different permits). As street preachers, plaintiffs do not have the luxury of paying such costly fees every time they wish to speak in New York City. Additionally, since the payment is purportedly used for "policing", it is very unnecessary. A copy of the controverted "Sound Device Application" relating to § 10-108 of the New York City Administrative Code is attached as **Exhibit D**.

<u>First Cause of Action</u>

**The Code, as applied, violates the U.S. Const. Amend. 1 – 42 U.S.C. § 1983**

36.    Plaintiffs reallege and incorporate herein the foregoing paragraphs of this Complaint as if repeated verbatim.

37.    Plaintiffs' proclamation of their religious beliefs to passersby on a public sidewalk in the City of New York constitutes speech and expression that is protected by

the First Amendment to the United States Constitution.

38.    Plaintiffs' proclamation of their religious beliefs to passersby on a public sidewalk in the City of New York constitutes the free exercise of religion that is protected by the First Amendment to the United States Constitution.

39.    The public streets and sidewalks of the City of New York constitute traditional public fora.

40.    Defendants' application of the City of New York's noise code to require Plaintiffs to cease and desist using their sound amplification device to communicate their message on April 13, 2011 violated the First Amendment to the United States Constitution in the following particulars, including but not limited to:

    a. These portions of the Code create a chilling effect on expression that is protected by the First Amendment to the United States Constitution;

    b. These portions of the Code are overbroad, allowing for the prohibition of constitutionally protected expression as well as expression that may be constitutionally proscribed;

    c. These portions of the code discourage potential speakers, while eliminating anonymous and spontaneous speech;

    d. Defendants' requirement that plaintiffs obtain a permit for using sound amplification is an unconstitutional prior restraint on plaintiffs' First Amendment protected speech;

    e. Defendants' requirement that Plaintiffs cease and desist the use of their sound amplification device was not the least restrictive means of furthering legitimate government interests;

9

f. Defendants' application of the Code to require Plaintiffs to cease and desist use of their sound amplification device was not narrowly tailored to achieve a legitimate government interest;

g. Defendants' application of the Code to require Plaintiffs to cease and desist use of their sound amplification device failed to provide reasonable alternative avenues for Plaintiffs' expression;

41.    In adopting and enforcing the Code against Plaintiffs, the Defendants have acted and continue to act under the color of the law of the State of New York.

42.    Defendants' enforcement of the Code is in accordance with the official policy and practice of the Defendant City of New York.

43.    Plaintiffs are entitled to relief under 42 U.S.C. § 1983 for the deprivation of their First Amendment rights caused by the Defendants.

## Second Cause of Action

### The Code, on its face, violates the U.S. Const. Amend. 1 – 42 U.S.C. § 1983

44.    Plaintiffs reallege and incorporate herein the foregoing paragraphs of this Complaint as if repeated verbatim.

45.    Portions of the Code, including, but not limited to §§ 10-108 (d) – (j) on their face, violate the First Amendment to the United States Constitution in the following particulars, including but not limited to:

a. These portions of the Code create a chilling effect on expression that is protected by the First Amendment to the United States Constitution;

b. These portions of the Code are overbroad, allowing for the prohibition of constitutionally protected expression as well as expression that may be constitutionally proscribed;

10

    c. These portions of the code discourage potential speakers, while eliminating anonymous and spontaneous speech;

    d. Defendants' requirement that plaintiffs obtain a permit for using sound amplification is an unconstitutional prior restraint on plaintiffs' First Amendment protected speech;

    e. Defendants' requirement that Plaintiffs cease and desist the use of their sound amplification device was not the least restrictive means of furthering legitimate government interests;

    f. Defendants' application of the Code to require Plaintiffs to cease and desist use of their sound amplification device was not narrowly tailored to achieve a legitimate government interest;

    g. Defendants' application of the Code to require Plaintiffs to cease and desist use of their sound amplification device failed to provide reasonable alternative avenues for Plaintiffs' expression.

46.    Defendants' enforcement of the Code is in accordance with the official policy and practice of the Defendant City of New York.

47.    Plaintiffs are entitled to relief under 42 U.S.C. § 1983 for the deprivation of their First Amendment rights caused by the Defendants.

**Third Cause of Action**

**The Code, on its face, violates the U.S. Const. Amend. 14 – 42 U.S.C. § 1983**

48.    Plaintiffs reallege and incorporate herein the foregoing paragraphs of this Complaint as if repeated verbatim.

49.     Portions of the Code, including, but not limited to to §§ 10-108 (d) – (j), violate the Fourteenth Amendment to the United States Constitution in the following particulars, including but not limited to:

    a.     Said portions of the Code, are unconstitutionally vague, failing to provide adequate notice as to what expressive conduct is prohibited;

    b.     Said portions of the Code, vest unfettered discretion in City police officers to make decisions concerning enforcement of the Code absent sufficient objective guidelines.

    c.     portions of the Code, vest unfettered discretion in City police officers to revoke or decide not to grant a permit indefinitely.

50.     Defendants' enforcement of the Code is in accordance with the official policy and practice of the Defendant City of New York.

51.     Plaintiffs are entitled to relief under 42 U.S.C. § 1983 for the deprivation of their Fourteenth Amendment rights caused by the Defendants.

### Fourth Cause of Action
**The Code, on its face and as applied, violates NY Const. Art. I, §§ 3, 8 and 9.**

52.     Plaintiffs reallege and incorporate herein the foregoing paragraphs of this Complaint as if repeated verbatim.

53.     Plaintiffs' proclamation of their religious beliefs to passersby on a public sidewalk in the City of New York constitutes speech and expression that is protected by the Constitution of the State of New York.

54.     The public streets and sidewalks of the City of New York constitute

traditional public fora.

55.    The Code, on its face, violates Art. I, §§ 3, 8 and 9 of the Constitution of New York State in the following particulars, including but not limited to:

    a. These portions of the Code create a chilling effect on constitutionally protected fee speech;

    b. These portions of the Code are overbroad, allowing for the prohibition of constitutionally protected expression as well as expression that may be constitutionally proscribed;

    c. These portions of the code discourage potential speakers, while eliminating anonymous and spontaneous speech;

    d. Defendants' requirement that plaintiffs obtain a permit for using sound amplification is an unconstitutional prior restraint on Plaintiffs' constitutionally protected speech;

    e. Defendants' requirement that Plaintiffs cease and desist the use of their sound amplification device was not the least restrictive means of furthering legitimate government interests;

    f. Defendants' application of the Code to require Plaintiffs to cease and desist use of their sound amplification device was not narrowly tailored to achieve a legitimate government interest;

    g. Defendants' application of the Code to require Plaintiffs to cease and desist use of their sound amplification device failed to provide reasonable alternative avenues for Plaintiffs' expression.

56.    Defendants' application of the New York City noise Code to require Plaintiffs to cease and desist using their sound amplification device to communicate their message on April 13, 2011 violated NY. Const. Art. I, §§ 3, 8 and 9 in the following particulars, including but not limited to:

    a. These portions of the Code create a chilling effect on constitutionally protected fee speech;

    b. These portions of the Code are overbroad, allowing for the prohibition of constitutionally protected expression as well as expression that may be constitutionally proscribed;

    c. These portions of the code discourage potential speakers, while eliminating anonymous and spontaneous speech;

    d. Defendants' requirement that Plaintiffs obtain a permit for using sound amplification is an unconstitutional prior restraint on Plaintiffs' constitutionally protected speech;

    e. Defendants' requirement that Plaintiffs cease and desist the use of their sound amplification device was not the least restrictive means of furthering legitimate government interests;

    f. Defendants' application of the Code to require Plaintiffs to cease and desist use of their sound amplification device was not narrowly tailored to achieve a legitimate government interest;

    g. Defendants' application of the Code to require Plaintiffs to cease and desist use of their sound amplification device failed to provide reasonable alternative avenues for Plaintiffs' expression.

57.     Plaintiffs are entitled to relief for the deprivation of their rights caused by the Defendants.

### Fifth Cause of Action
### Injunctive Relief

58.     Plaintiffs reallege and incorporate herein the foregoing paragraphs of this Complaint as if repeated verbatim.

59.     The actual and threatened enforcement of the Code against the Plaintiffs have prevented and will prevent the Plaintiffs from exercising their rights to free speech under the Constitutions of the United States and New York.

60.     The restriction on the Plaintiffs' exercise of their constitutional rights constitutes irreparable harm.

61.     Plaintiffs request that this Court enjoin the Defendants from enforcing the Code.

### Sixth Cause of Action
### Declaratory Judgment Under 28 U.S.C. §§ 2201-2202

62.     Plaintiffs reallege and incorporate herein the foregoing paragraphs of this Complaint as if repeated verbatim.

63.     There presently exists between Plaintiffs and Defendants an actual, justiciable controversy over whether Plaintiffs may use an amplification device to express their sincerely-held religious beliefs on the public streets and sidewalks of the City of New York, and whether the Code is unconstitutional on its face.

64.     The Court should declare the respective rights and liabilities of Plaintiffs and Defendants regarding Plaintiffs' right to engage in constitutionally protected expression and the constitutionality of the Code.

65.    A judgment should be entered under 28 U.S.C. § 2201 declaring that the Code is unconstitutional on its face and/or as applied to Plaintiffs and whether Plaintiffs have the right to express their sincerely-held religious beliefs using amplification device on the public streets and sidewalks of the City of New York under circumstances including, but not limited to, those described herein.

### Prayer for Relief

WHEREFORE, Plaintiffs pray judgment be entered against Defendants as follows:

a)    That a declaratory judgment be entered pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., declaring that the Code is unconstitutional on its face and as applied to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution;

b)    That a preliminary injunction be entered forbidding the Defendants, their officers and agents from enforcing the Code against Plaintiffs;

c)    That an order be entered permanently enjoining the Defendants, their officers, and agents from enforcing the Code against Plaintiffs;

d)    That this Court award Plaintiffs nominal and compensatory damages in an amount to be determined at trial;

e)    That this Court order Defendants to pay Plaintiffs' attorney fees pursuant to 42 U.S.C. § 1988, together with the costs of this litigation; and

f)    Any and all such other and further relief as this Court may deem proper.

Dated: December 23, 2011

**John P. Margand**
SDNY Bar Number JM2001
Attorney for Plaintiffs.
670 White Plains Road, Suite 322
Scarsdale, NY 10583
914-723-1700    Fax 914-723-1788
E-mail: margandlaw@optimum.net

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above

action, that he/she has read the above complaint, and that the information contained

therein is true and correct. 28 U.S.C. §1746; 18 U.S.C §1621.

Executed at __HAMPTON  VA. 23666__ on __12 / 21 /__ 2011.
               Location                      (Date)

Don Karns

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above

action, that he/she has read the above complaint, and that the information contained

therein is true and correct. 28 U.S.C. §1746; 18 U.S.C §1621.

Executed at <u>62 E. STEWART AVE, LANSDOWNE, PA</u> on <u>DECEMBER 20,</u> 2011.
                          Location                            (Date)

*Michael Marcavage*
Michael Marcavage

19

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above

action, that he/she has read the above complaint, and that the information contained

therein is true and correct. 28 U.S.C. §1746; 18 U.S.C §1621.

Executed at 406 E. BROADWAY AVE. Meridian on Dec. 22, _____ 2011.
                    Location          IDAHO 83642      (Date)

Shawn Holes

20

EXHIBIT A



EXHIBIT B

# Transcript of NYC Video, April 13, 20011

*(Don Karns is preaching. He is approached by several officers from the NYPD.)*

**Don Karns:** Why's that?

**Officer Harper:** It's against the law. You have to have an amplified sound permit in order to use an amplified device.

**Michael Marcavage:** Um, officers, the United States Supreme Court decided this case.

**Don Karns:** *(Talking to one of the other men)* We will, but right now they're trying to suppress my freedom of speech.

**Officer Harper:** No, I'm not. You can talk.

**Don Karns:** And this is religious speech. I'm not here soliciting.

**Officer Harper:** I know that.

**Don Karns:** The Supreme Court – it protects religious speech.

**Officer Harper:** I'm not telling you can't speak.

**Don Karns:** If you have a decibel meter, I'd be glad to be within the range of your decibel meter.

**Officer Harper:** I don't need a decibel meter.

**Don Karns:** What, is there some ordinance I'm violating?

**Officer Harper:** Yeah, you ---

**Don Karns:** What ordinance would that be?

**Officer Harper:** What order?

**Don Karns:** What ordinance?

**Officer Harper:** What ordinance that you're violating? You have to have an amplified sound [permit] in order to use an amplified (inaudible)

**Don Karns:** Which ordinance is that, sir? Which law am I breaking?

**Officer Harper:** Sound ordinance. The sound --- sound.

**Don Karns:** I've been here two days now, you know, and no one's had an issue.

**Officer Harper:** (inaudible) I already got a complaint about you.

**Michael Marcavage:** Officer, I'm with him. We're together. *Saia v. New York* decided this case very fairly. Well, the Supreme Court said that a permit being required for free speech purposes for small groups is unconstitutional to ban it altogether, and that's what you're doing.

**Officer Harper:** (inaudible)...what exactly?

**Michael Marcavage:** Getting a permit is a prior restraint on one's free speech rights, and the Supreme Court in *Saia v. New York* clearly laid that out.

**Officer Harper:** I'm not saying you can't speak.

**Michael Marcavage:** Well, you're saying he can't use amplification.

**Officer Harper:** That's what I'm saying.

**Michael Marcavage:** But the Supreme Court said that this is a protected means of free speech. We can send you the letter. We've sent it to the city before.

**Officer Harper:** Unless I see something that states otherwise, you can't use that device.

**Second Officer:** Got it with you?

**Michael Marcavage:** Well, I have the decision. Yeah, we could pull the decision up. I could have it faxed over right away.

**Officer Harper:** If I show it to you, it's going to be in the form of a summons.

**Don Karns:** Why is that? As a citizen, I can't ever request you show me what law?

**Officer Harper:** We can show --- If you wanna go back to the precinct I can show you. I don't have it on me. Would you like to go back to the precinct?

**Second Officer:** We can show it to you. Would you like to come with us? We'll show you.

**Officer Harper:** Voluntarily.

**Don Karns:** As a prisoner?

**Officer Harper:** Nnnnnnn, no. Voluntarily.

**Second Officer:** No, I'm asking you. If you were coming as a prisoner, I wouldn't be asking you.

**Shawn Holes:** The other day we were asked us to do something by police and they arrested us.

**Michael Marcavage:** Does your ordinance trump the Constitution of the United States? I don't understand how you can override *Saia v. New York* where the Supreme Court said ---

**Officer Harper:** I don't know about that.

**Michael Marcavage:** It's decades ago. And I understand you may have – You have to adhere to that ruling, not the ruling of a local ordinance.

**Officer Harper:** Yeah (inaudible)

**Michael Marcavage:** No. Does it trump the Constitution?

**Officer Harper:** That's something you've got to take up with your elected official.

**Michael Marcavage:** Well, no, the law enforcement has to abide by the Constitution.

**Officer Harper:** Right, and local laws.

**Michael Marcavage:** Well, no, if the local laws conflict with the Supreme Court ruling ---

**Officer Harper:** Then that's something you bring to court, not on the street.

**Michael Marcavage:** Okay, so I believe abortion is murder. I mean, you're not going to go and arrest abortionists.

**Second Officer:** Let's not get off the topic.

**Michael Marcavage:** I'm just giving an example that you have to comply with the Constitution, and the Constitution clearly provides ---

**Officer Harper:** I agree, but this isn't the place to settle it.

**Michael Marcavage:** Well, it is.

**Officer Harper:** No, it isn't really. The court is where you do it. (inaudible) Supreme Court.

**Michael Marcavage:** (on the phone) Heather. Heather, can you get *Saia v. New York*?

**Officer Harper:** If you really want to see the local ordinance, you can voluntarly -- I'm not arresting you. Police Officer Jason Harper. I can give you a business card, too.

**Michael Marcavage:** You have a business card? You're not familiar with *Saia v. New York?*

**Officer Harper:** No, I'm not.

**Michael Marcavage:** Would you be willing to go back and look it up?

**Officer Harper:** Not necessarily. All I'm concerned with --- All I'm concerned with is what I'm instructed to do as a law enforcement officer, and what laws I'm instructed to enforce.

**Michael Marcavage:** Officer Harper, all I'm saying is that this is clearly established law. The Supreme Court ruled that requiring a permit to engage in amplified free speech ---

**Officer Harper:** I do not doubt that it's true. I do not doubt that that's true at all.

**Michael Marcavage:** Well, that's what you need to adhere to, not the city ordinance.

**Officer Harper:** Yeah, but I can't decide to only enforce constitutional laws and not local laws because I feel like they are unconstitutional.

**Michael Marcavage:** But you swore an oath to uphold the Constitution of the United States.

**Officer Harper:** Yes, I did. Absolutely. All law enforcement officers do.

**Michael Marcavage:** *Saia v. New York* ---

**Officer Harper:** However, I'm also required --- and this is the also part, this is the addendum --- to enforce local laws, and this is a local law.

**Michael Marcavage:** What do you do when a local law conflicts with the Supreme Court?

**Officer Harper:** Then --- With me, personally?

**Michael Marcavage:** Yeah.

**Officer Harper:** Then I take that to the Supreme Court, because that's the proper place for something like that to get changed.

**Michael Marcavage:** So, when they make a ruling, then it really means nothing.

**Officer Harper:** When who makes a ruling?

**Michael Marcavage:** The Supreme Court already ruled in a similar matter with amplified free speech.

**Officer Harper:** It does, if for some reason we haven't gotten a notification as law enforcement officers that the law that we're enforcing is unconstitutional and needs to be repealed. Why hasn't that happened? Why hasn't it been repealed?

**Michael Marcavage:** I don't know.

**Officer Harper:** Me neither.

**Michael Marcavage:** But, as an officer ---

**Officer Harper:** But, it's still a local law.

**Michael Marcavage:** But isn't your oath to uphold the Constitution ---

**Officer Harper:** Absolutely.

**Michael Marcavage:** Above and beyond any local ordinance.

**Officer Harper:** I don't know about the above and beyond part.

**Michael Marcavage:** What if you had a local ordinance that said –

**Officer Harper:** I don't see anything that says above and beyond.

**Third Officer:** Either he turns it off, or – (inaudible)

**Shawn Holes:** I turned it off. (inaudible) Because we're going to turn it back on.

**Officer Harper:** We can discuss this at the precinct when you have time.

**Michael Marcavage:** Who is the precinct ---?

**Officer Harper:** Commanding officer?

**Michael Marcavage:** Yeah, commanding officer.

**Officer Harper:** Captain David Ehrenberg.

**Michael Marcavage:** Captain David Ehrenberg. And is he reachable at this number?

**Officer Harper:** No. That's my number.

**Michael Marcavage:** Oh, he's not ---? Well, the precinct number's there.

**Officer Harper:** Yeah.

**Michael Marcavage:** He's not there?

**Officer Harper:** No, I can give you his number if you would like.

**Michael Marcavage:** (To Shawn Holes) Do you guys have a pen?

**Shawn Holes:** I do have a pen. (Walks away to get a pen. Part of conversation is inaudible until he returns.)

**Michael Marcavage:** Really? That's sad.

**Officer Harper:** I didn't think it was unconstitut -- It _is_ sad.

**Michael Marcavage:** But there's no qualified immunity for officers who defy a clearly established ruling and this is a clearly established ruling.

**Officer Harper:** Are you saying that they shouldn't have immunity for me?

**Michael Marcavage:** You don't have it now.

**Officer Harper:** You're mean.

**Michael Marcavage:** You're violating _Saia_. You don't. You could be sued in your individual capacity now. What is your number? What is the number?

**Officer Harper:** Uh, 678

**Michael Marcavage:** Uh-hm.

**Officer Harper:** 1301

**Michael Marcavage:** That's 212-678-1301?

**Officer Harper:** That's correct.

**Michael Marcavage:** Yeah, I mean, this has been clearly established law for decades, and your city has yet to get in compliance with the law.

**Officer Harper:** I think that's sad.

**Michael Marcavage:** It is sad. And it shouldn't be the case.

**Officer Harper:** I agree with you, actually.

**Michael Marcavage:** Well, I would hope that you would just affirm our right to do what we're doing. That's all.

*(Officer Harper shakes his head.)*

**Michael Marcavage:** We'll turn it down. We'll make sure it's reasonable.

**Officer Harper:** It's gonna have to be off. If I have to come back here, then I'm gonna have to issue a summons.

**Michael Marcavage:** Altogether? We can't even turn it down a little bit?

**Officer Harper:** Freedom of speech means your mouth. It doesn't mean necessarily say that you could use an amplified sound device. I don't see anything in the Constitution that says you're allowed to use amplified sound.

**Michael Marcavage:** (on the phone) Heather, can you send me some of those things from *Saia*? Text them to me on my phone? Yeah, what the Supreme Court said about amplification. Can you do it quickly?

**Don Karns:** You weren't here like --- Some of the students (inaudible). Last time we were here, they had guitars ---

**Officer Harper:** None of the students complained.

**Don Karns:** (inaudible) noise to drown us out. There were students out here.

**Officer Harper:** Students?

**Don Karns:** They brought guitars and accordions out here.

**Shawn Holes:** That's a heckler's veto.

**Don Karns:** It's the message they're opposed to. Not the volume.

**Second Officer:** I don't know if we got a complaint for that. Did we get a complaint for that?

**Officer Harper:** No.

**Michael Marcavage:** What I'm saying is that if we call the station, do you think it's resolvable at that level? We'll stop until – you know what I'm saying? If we can get you a copy of this Supreme Court decision and ruling that says that –

**Officer Harper:** That's something that you need to bring to the police commissioner.

**Michael Marcavage:** You see, we're law-abiding citizens. We're not here to violate the law, but I think the officers need to adhere to the Constitution rather than a local ordinance.

**Second Officer:** I agree with you. We shouldn't have to bother you.

**Officer Harper:** I don't --- I don't wanna be ---

**Michael Marcavage:** Would you allow us to continue?

**Officer Harper:** I can't.

**Second Officer:** We can't. We're sent here. If it was up to me, we'd keep driving. I didn't even --- We got a complaint on it.

**Michael Marcavage:** I just don't understand. We had an officer one time, his chief said, 'You need to arrest these people. They're here and we don't want them here,' and he said, 'No, they have a right to be here.' So, he was disciplined.

**Officer Harper:** Where was this?

**Michael Marcavage:** This was at a campus in Pennsylvania. We were on a college campus.

**Officer Harper:** Okay.

**Michael Marcavage:** And he defied that unlawful order. This is an unlawful order, because there is no law that would substantiate you saying that we would have to shut it off altogether in the City of New York. Now, if there is a local ordinance that says we can't use it altogether, that would be in direct violation of *Saia v. New York*, which is the Supreme Court ruling that said that free speech is

protected – that amplified free speech is protected – and that requiring a permit in advance, which you're doing – you're saying that we need to get a permit – is a quote unquote prior restraint on one's First Amendment rights. So, that's all we're asking is if you'd just let us continue, we'd be more than happy to ---

**Officer Harper:** Yeah, but this isn't the place to do it.

**Michael Marcavage:** Where is the place to do it, then?

**Officer Harper:** You have to take it up with your local elected officials, who are going to make the necessary changes in our departmental policies, so that this is a non-issue, so that you and I don't have to have this kind of conversation on the street, and you bring up Supreme Court cases that you know I wouldn't have heard about.

**Michael Marcavage:** I've already told the city. We've already notified the city in writing.

**Officer Harper:** And what did they say?

**Michael Marcavage:** Never responded. We notified the city in writing about this before. We don't just come out here and defy the law. We come out here with the intention to comply with the law, but when the law – the local ordinances – are in defiance of the Supreme Court ruling, in this case, *Saia v. New York*, which says that it's a clearly established right to use amplification without the need for a permit, then I just don't know why you wouldn't comply with that if we're willing to provide that to you. I could fax it to your office.

**Officer Harper:** Well, Provide it. Provide it. But in the meantime ---

**Michael Marcavage:** Do you have a fax number that I could get it to you there?

**Officer Harper:** 678-1256.

**Michael Marcavage:** 1256?

**Officer Harper:** Uh-huh.

**Michael Marcavage:** So, we'll fax the letter over to your office. And then --- I have a quote from the actual ruling here. (Reading) Loudspeakers are today indispensable instruments of effective public speech. It is the way people are reached. Loudspeakers are today indispensable instruments of effective public speech. It is the way people are reached. So, what the Supreme Court ruling in *Saia v. New York* was saying [was] that these loudspeakers or amplification ---

**Officer Harper:** So, they ruled in favor of *Saia*, I'm imagining.

**Michael Marcavage:** They did. Without a permit. They said it's a prior restraint. When I have to go to the police chief or the police department to get permission to use amplification for a free speech setting ---

**Officer Harper:** So, fax it to me. I'll confer with my legal bureau.

**Second Officer:** Yeah, fax it to us and we'll do the research on it.

**Michael Marcavage:** Alright, we'll fax it. Yeah, and then we'll stop ---

**Second Officer:** And then by all means then you can --- All that we're asking you is just for now –

**Michael Marcavage:** Okay.

**Second Officer:** until we clear this up, because ---

**Michael Marcavage:** Okay. We'll fax *Saia v. New York*, and we'll fax the letter that actually outlines many federal circuits that have also affirmed the right to use free speech – amplification for public speech.

**Officer Harper:** Okay.

**Michael Marcavage:** We're just a few people. We're not having a mass demonstration.

**Officer Harper:** I know. I see that.

**Michael Marcavage:** And we're willing to ---

**Don Karns:** We're not selling anything.

**Officer Harper:** Right.

**Michael Marcavage:** So, we'll fax that over right now.

**Officer Harper:** Okay.

**Michael Marcavage:** Okay. Thank you, sir.

*(Officers leave.)*

**Shawn Holes:** Thanks Officer Harper. Thanks guys. The Lord protect you while you do your duty. God bless you.

**Don Karns:** *(preaching)* I thank God that I live in a free country. We have freedom of speech.

EXHIBIT C

## JOHN P. MARGAND
### ATTORNEY AT LAW

ADMITTED IN NY, NJ and the
DISTRICT OF COLUMBIA

670 WHITE PLAINS ROAD
SUITE 322
SCARSDALE, NY 10583
914-723-1700
FAX: 914-723-1788

MANHATTAN OFFICE
60 East 42nd Street
Suite 1419
New York, NY 10165

_Tel. 212-599-1001_
_Fax 212-599-1009_

August 13, 2011

Captain David Ehrenberg
New York City Police Department
26 Precinct
520 West 126th Street
New York, New York 10027

*By Certified Mail RRR*

Re:    Michael Marcavage and Repent America

Dear Captain Ehrenberg:

The undersigned has been retained by Michael Marcavage in connection with the violation of his religious liberty and free speech activities in your precinct.

Mr. Marcavage is the director of Repent America, and evangelistic and Christian liberties organization based in Philadelphia, Pennsylvania which regularly engages in free speech activities on sidewalks and streets as an expression of its members' sincerely-held religious beliefs. On April 13, 2011, Mr. Marcavage and others associated with Repent America engaged in free speech activities by proclaiming their religious beliefs to passersby on the corner of Broadway and W. 116th Avenue.

Because of the ambient noise and commotion associated with the traffic at this busy location, Mr. Marcavage employed an amplification device (a handheld microphone connected to one small speaker) to facilitate the communication of his message to passersby. Mr. Marcavage and those accompanying him acted in an orderly manner and kept their sound at a reasonable volume appropriate to the surroundings and circumstances. As Mr. Marcavage was engaging in free speech and free exercise activities on the public sidewalk at the corner of Broadway and W. 116th Avenue, he was approached by Officer Jason Harper, a police officer of the City of New York Community Affairs Department of the 26th Precinct who ordered him to stop using the amplification device, under the threat of citation or arrest, on the grounds that the amplification device could not be used without a permit. Mr. Marcavage complied with Officer Harper's order to stop using the amplification device in communicating their message.

After complying with Officer Harper's order, Mr. Marcavage wrote to you to relate the events that had transpired and to seek assistance in regaining his rights to communicate his message effectively by using the amplification device. In his letter, Mr. Marcavage cited the United States Supreme Court decision of *Saia v. New York* (1948) and other court decisions which are unequivocal in their defense of amplified speech activity. (See attached letter of April 13, 2011.) You have thus far made no response.

The amplification ordinance, New York City Administrative Code Chapter 1 - § 10-108 and its enforcement by you, Officer Harper and other officers of your precinct violate the free speech and religious liberty rights of Mr. Marcavage and Repent America which are protected by the First Amendment to the United States Constitution. In addition the amplification ordinance as enforced by you and your officers violate the rights of Mr. Marcavage and Repent America which are protected by the Fourteenth Amendment to the United States Constitution in that the provisions of the ordinance are unconstitutionally vague, provide inadequate notice as to what expressive conduct is prohibited and vest unfettered discretion with you and your fellow police officers in making decisions concerning enforcement of the ordinance which lacks sufficient objective guidelines. It also appears that Officer Harper's enforcement of the ordinance is the official policy of the City of New York.

Since the ordinance and its enforcement by you and your officers violate Mr. Marcavage's constitutional rights protected by the First and Fourteenth Amendments to the United States Constitution, he is entitled to relief under 42 U.S.C. § 1983. You and your officers have also violated Article I §§ 3, 8, and 9 of the New York State Constitution which guarantee the religious liberty and free speech rights of Mr. Marcavage and Repent America.

In light of the above, it is respectfully request that you and your officers cease and desist in your enforcement of New York City Administrative Code Chapter 1 - § 10-108 insofar as it violates the constitutionally protected liberties of Mr. Marcavage and Repent America. Please confirm that you will do so. In the event I do not hear from you within the next 30 days, I will have no alternative but to seek appropriate judicial relief.

Very truly yours,

John P. Margand

Encl.

To:          Captain David Ehrenberg

From:        Michael Marcavage

Fax:         (800) 373-7368

Phone:       (800) 373-7368. Ext. 5


Date:        04/13/2011

Subject:     URGENT


Comments:

# REPENT AMERICA

P.O. Box 30000, Philadelphia, PA 19103     1-800-3-REPENT

*"God now commandeth all men every where to repent."* – Acts 17:30

April 13, 2011

Captain David Ehrenberg
New York Police Department
26th Precinct
520 W. 126th Street
New York, NY 11027

Captain Ehrenberg,

I am writing in regard to an urgent matter that warrants your immediate attention. This afternoon, 26th Precinct Community Affairs Officer Jason Harper shut down our amplified free speech activity as we were engaging in constitutionally protected speech on the intersection of Broadway and W. 116th Street. He stated that we must obtain a permit in order to engage in amplified free speech, and even though we outlined the law as declared by the precedential Supreme Court decision in *Saia v. New York*, Officer Harper refused to uphold the Constitution. Instead, Officer Harper forbade the usage of amplification under the threat of citation and/or arrest.

It is extremely difficult to communicate at this intersection without the aid of amplification. In addition to all of the sounds of the urban environment, there are eight lanes of noisy traffic, screeching sirens, loud hydraulics from busses and the boom of passing tractor trailers. All of these factors drown out our voices; and therefore, the only way to be heard effectively is with the use of amplification. However, Officer Harper has prohibited us from being able to be heard in this raucous atmosphere, which is severely and adversely affecting our ability to communicate.

Therefore, I am writing to provide you with information regarding the constitutional protections afforded to amplified free speech activity as outlined by the United States Supreme Court and the federal circuit courts, and asking that you immediately have your officers stand down, and retract their threats of citation and arrest.

Especially in areas that are considered to be traditional public forums, such as streets, sidewalks and parks, speech is entitled to utmost protection. The Supreme Court established in the landmark case of *Hague v. CIO* (1939): "Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public, and time out of mind, have been used for the purposes of assembly, communicating thoughts between citizens and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights and liberties of citizens." Any restrictions on free speech in these areas are subject to strict scrutiny.

Visit us online at: **www.repentamerica.com**

The Supreme Court then affirmed in *Saia v. New York* (1948) that free speech rights in public forum areas encompass and include amplified free speech activity. The court set a binding precedent when it upheld the usage of sound equipment as an effectual means of addressing the public in declaring, "Loud-speakers are today indispensable instruments of effective public speech. ... It is the way people are reached."

A number of the federal circuit court decisions that have followed *Saia* have also ruled that amplified free speech must be guaranteed constitutional protection. In *Jim Crockett Promotions v. City of Charlotte* (1983), the 4th Circuit stated, "[T]he 'right to amplify speech' is within the protection of the First Amendment." *Reeves v. McConn* (5th Circuit, 1980) also asserted, "[T]he use of sound equipment within reasonable limits is an aspect of free speech protected by the First Amendment. The right to communicate inherently comprehends the right to communicate effectively." Likewise, in 1991, the 7th Circuit remarked in *Stokes v. City of Madison*, "... Madison contends that only speech, not amplified speech enjoys First Amendment protection. This is incorrect. The First Amendment protects effective speech, not merely uttered words ..."

In noisy city environments and at populated public events, it is an absolute necessity to use amplification in order to communicate effectively. "[A] public address system is reasonably required to be heard above the normal noises of the city." (*U.S. Labor Party v. Rochford*, ND District Court, Illinois, 1975) "They cannot effectively communicate ... without using sound amplification devices. 'It is the way people are reached.'" (*Maldonado v. County of Monterey*, ND District Court, California, 1971, citing *Saia*) *Reeves v. McConn* also stated clearly: "Precisely because the downtown district is already a busy and noisy place, reasonably amplified free speech is guaranteed a broad right to equal protection in these aspects of modern urban life. ... [T]here is probably no more appropriate place for reasonably amplified free speech than the streets and sidewalks of a downtown business district."

Therefore, because the First Amendment thus protects amplified free speech as a necessary vehicle of effective communication, it is impermissible to enact a complete ban on amplified speech. "Absolute prohibition within municipal limits of all sound amplification, even though reasonably regulated in place, time and volume, is undesirable and probably unconstitutional as an unreasonable interference with normal activities." (*Kovacs v. Cooper*, 1949) "The mere existence of an alternative means of expression – in this case, unamplified speech – cannot by itself justify a restraint on some particular means that the speaker finds more effective." (*McConn*)

Instead, municipalities must be careful to tailor their regulations pertaining to amplified free speech activity "only with precision." *Saia* instructed, "Any abuses which loud-speakers can create can be controlled by narrowly drawn statutes." "The narrowly tailored standard does not tolerate a time, place or manner regulation that may burden substantially more speech than necessary to achieve its goal." (*Deegan v. City of Ithaca*, 2nd Circuit, 2006) It "must avoid unnecessary intrusion of ... freedom of expression." (Ibid.)

Municipalities also must avoid the usage of permit schemes which place an unconstitutional prior restraint on the right to amplified free speech. *Saia* struck down an ordinance identical to the current New York City statute, stating that "it establishes a previous restraint on the right of free speech in violation of the First Amendment which is protected by the Fourteenth Amendment against state action." Furthermore, the court declared,

> "The present ordinance has the same defects. The right to be heard is placed in the uncontrolled discretion of the Chief of Police. He stands athwart the channels of communication as an obstruction which can be removed only after criminal trial and conviction and lengthy appeal. A more effective previous restraint is difficult to imagine. Unless we are to retreat from the firm positions we have taken in the past, we must give freedom of speech in this case the same preferred treatment that we gave freedom of religion in the *Cantwell* case, freedom of the press in the *Griffin* case, and freedom of speech and assembly in the *Hague* case.
>
> ... The present ordinance would be a dangerous weapon if it were allowed to get a hold on our public life. Noise can be regulated by regulating decibels. The hours and place of public discussion can be controlled. But to allow the police to bar the use of loud-speakers because their use can be abused is like barring radio receivers because they too make a noise."

Therefore, in light of these directives from the United States Supreme Court and the federal circuit courts, I implore you to ensure that amplified free speech activity is upheld and properly protected in New York City, and to direct your officers to stand down on their unlawful threats. Additionally, it is imperative that you respond to this correspondence within the next 30 minutes via phone or fax at (800) 373-7368, so that these matters be resolved immediately as every lost moment affects our ability to communicate effectively. Thank you in advance for your attention to this important matter.

Sincerely,

*Michael Marcavage*

Michael Marcavage
Director, Repent America

cc: Officer Jason Harper
    Chief Joseph Esposito
    Alliance Defense Fund

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

**SENDER: COMPLETE THIS SECTION**

- ☒ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ☒ Print your name and address on the reverse so that we can return the card to you.
- ☒ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Cpt Davis Ehrenburg
NYC Police Dept
26th Precint
520 W. 126th St.
Ny NY 10027

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                           ☐ Agent
                            ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:     ☐ No

3. Service Type
   ☐ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)

7006 0100 0001 5045 9569

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

ohn P. Margand
70 White Plains Road
uite 522
carsdale, NY 10583



**CERTIFIED MAIL**

7006 0100 0001 5045 9569

UNITED STATES POSTAGE

PITNEY BOWES
02 1P      $ 005.59
0003965151  AUG 15 2011
MAILED FROM ZIP CODE 10583

Captain David Ehrenberg
New York City Police Department
26th Precinct
520 West 126th Street
New York, NY   10027

UNITED STATES POSTAL SERVICE



First-
Posta
USPS
Permi

ᵉ Sender: Please print your name, address, and ZIP+4 in this b

John P. Morgand
670 White Plains Road
Suite 322
Scarsdale, New York 10583

**U.S. Postal Service**
**CERTIFIED MAIL  RECEIPT**
(Domestic Mail Only: No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To  CMT DAVID Ehresburg
         NYC Police Dept
Street, Apt. No.; or PO Box No.  26th Precint 520W 126St
City, State, ZIP+4  N.N.Y 10027

PS Form 3800, June 2002                See Reverse for Instructions

7006 0100 0003 5045 9569

EXHIBIT D

**SOUND DEVICE APPLICATION**
PD 656-041A (Rev. 09-07)

Precinct _____

Approval Date _____

## INSTRUCTIONS

1. This is an application, NOT a sound device permit.
2. All answers must be either typewritten or printed in ink.
3. File application in the precinct where the device is to be used.
4. File application at least five days before the day of the event. Exceptions to this requirement are listed below.
5. A fee of $45 for the first day's use of the permit will be required upon approval of the application and receipt of the sound device permit.
6. Make Bank Teller's Check, Certified Check or Money Order payable to the Police Department, City of New York.
7. If approved, the permit is to be picked up on the day of the event or as directed by the precinct staff.

| Name of Applicant | Address | Phone |
|---|---|---|

Is Applicant a Corporation, Organization, or Association? ☐ Yes ☐ No    If Yes, Indicate:

| Name | Address | Phone |
|---|---|---|

| Event Location | Date | From | Time | To |
|---|---|---|---|---|

| Event Location | Date | From | Time | To |
|---|---|---|---|---|

| Is location within 500 feet of any School, Church, Hospital or Similar Institution? ☐ Yes ☐ No | Approximately how many feet from the device is speaker's voice proposed to be heard? | Approximately how many people will be at event? |
|---|---|---|

Are Funds to be Solicited? ☐ Yes ☐ No    Has Permit from Dept. of Social Services been obtained? ☐ Yes ☐ No

Dept. of Social Services Permit No. _____    If No, explain:

**Penalty for Falsification of any statement made herein is an offense punishable by a fine or imprisonment or both.**

_____
Signature of Applicant or Agent

| Investigated By: | Precinct: | ☐ Approved  ☐ Disapproved   If Disapproved, Reason: |
|---|---|---|

| Area Office Notified ☐ Yes ☐ No | Who Notified: | ☐ Approved  ☐ Disapproved   If Disapproved, Reason: |
|---|---|---|

Does Event Affect Adjoining Precinct? ☐ Yes ☐ No    If Yes, Who Notified:

Comments:

_____
Signature of Commanding Officer

PERMIT TO OPERATE SOUND DEVICES

Section 10-108 of the Administrative Code, in Relation to Use of Sound Devices, provides as follows:

**1. SPECIAL RESTRICTIONS.** The police commissioner shall not issue any permit for the use of a sound device or apparatus: In any location within five hundred feet of a school, courthouse or church, during the hours of school, court or worship, respectively, or within five hundred feet of any hospital or similar institution; in any location where the commissioner, upon investigation, shall determine that the conditions of vehicular or pedestrian traffic or both are such that the use of such a device or apparatus will constitute a threat to the safety of pedestrians or vehicular operators; in any location where the commissioner, upon investigation, shall determine that conditions of overcrowding or of street repair or other physical conditions are such that the use of a sound device or apparatus will deprive the public of the right to the safe, comfortable, convenient and peaceful enjoyment of any public street, park or place for street, park or other public purposes, or will constitute a threat to the safety of pedestrians or vehicle operators; in or on any vehicle or other device while it is in transit; between the hours of 10 p.m. and 9 a.m.; or between the hours of 8 p.m. or sunset, whichever is later, and 9 a.m. on weekdays and between the hours of 8 p.m. or sunset, whichever is later, and 10 a.m. on weekends and public holidays, in any location within fifty feet of any building that is lawfully occupied for residential use. The distance of fifty feet shall be measured in a straight line from the point on the exterior wall of such building nearest to any point in the location for which the permit is sought.

**2. POWER OF POLICE COMMISSIONER.** Any permit issued pursuant to this section may be revoked by the police commissioner for cause.

**3. FEES.** The fee for each sound device permit in connection with matters of public interest or in political campaigns shall be $45.00 per day. No fees to be charged for permits issued for use of sound devices used by any bureau, commission, board or department for the United States government, the State of New York, and the City of New York.

**4. VIOLATIONS.** Any person who shall violate any provision of this section, upon conviction thereof, shall be punished by a fine of not more than one hundred dollars or imprisonment for thirty days, or both. Any person who shall violate any provision of this section, any rule promulgated pursuant thereto or the terms of a permit issued pursuant to this section, shall be liable for a civil penalty recoverable in a civil action brought in the name of the police commissioner or the commissioner of environmental protection or in a proceeding before the environmental control board in an amount of two hundred fifty dollars for the first violation, five hundred dollars for the second violation and seven hundred fifty dollars for the third and each subsequent violation. However, any person who commits a fourth and any subsequent violation within a period of six months shall be classified as a persistent violator and shall be liable for a civil penalty of one thousand dollars for each such violation.