UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MICHAEL MARCAVAGE et al.,

       Plaintiffs,

-v-                                         No.  11 Civ. 9482 (LTS)(JLC)

THE CITY OF NEW YORK et al.,

       Defendants.
-------------------------------------------------------x

**OPINION AND ORDER**

APPEARANCES:

LAW OFFICES OF JOHN P. MARGAND      NEW YORK CITY LAW DEPARTMENT
  By: John Perry Margand                     By: Jacqueline Hui
670 White Plains Road, Suit 322            100 Church Street
New York, New York 10583                   New York, New York 10007

*Counsel for Plaintiff*                            *Counsel for Defendant*

LAURA TAYLOR SWAIN,
UNITED STATES DISTRICT JUDGE

SWAIN, U.S.D.J.

Plaintiffs Michael Marcavage, Repent America, an unincorporated association by and through its Director, Michael Marcavage, Shawn Holes and Don Karns (collectively, "Plaintiffs") bring this action, asserting claims pursuant to 42 U.S.C. § 1983, for violations of their rights under the First and Fourteenth Amendments to the Constitution of the United States, and under Article I, §§ 3, 8, and 9 of the Constitution of New York State. Plaintiffs allege that the City of New York (the "City"), Police Officer Jason Harper ("P.O. Harper") and Police Captain David Ehrenberg ("Captain Ehrenberg" and collectively, "Defendants")[1] violated the Plaintiffs' rights to "free speech and free exercise activities" when Plaintiffs, who were preaching on a public street in New York City, were instructed to cease using a sound amplification device because they were not in compliance with a New York City law that requires a license to use such a device and restricts the times and places in which such devices can be used. Plaintiffs seek injunctive and declaratory relief preventing Defendants from enforcing New York City Administrative Code ("Admin Code") § 10-108, which is titled, "Regulation of Sound Devices or Apparatus" (hereinafter "Sound Amplification Devices Code" or "Code").

The Court has jurisdiction of Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction of their state law claims pursuant to 28 U.S.C. § 1367. Currently pending before the Court are three interrelated motions. Plaintiffs move for a preliminary injunction enjoining the City's enforcement of the Sound Amplification Devices Code, and the Defendants and Plaintiffs have filed cross motions for summary judgment. All

---

[1]  P.O. Harper and Captain Ehrenberg are sued in their individual and official capacities.

three of these motions turn on the constitutional validity of the Sound Amplification Devices Code. The Court has considered thoroughly all of the parties' submissions and arguments. For the following reasons, the Defendants' motion for summary judgment is granted in its entirety, the Plaintiffs' motion for summary judgment is denied, and the Plaintiffs' motion for a preliminary injunction is also denied.

## BACKGROUND

The following facts are drawn from the parties' submissions and are undisputed.[2] Michael Marcavage is the Director of Repent America, an "evangelistic and Christian liberties organization" that is based in Philadelphia, Pennsylvania. (Compl. ¶13.) The members of Repent America regularly express their religious beliefs by preaching on sidewalks and public streets. Plaintiffs Marcavage, Hole and Karns traveled to Manhattan, in New York City, to preach on April 13, 2011. They located themselves on the corner of Broadway and West 116th street, within close proximity to Columbia University. Because of the ambient noise and traffic commotion in the area, to make themselves heard, Plaintiffs decided to use an Aker MR2800, a small headset and amplifier device that is commonly used by tour guides and teachers.

At some point, while they were preaching, Plaintiffs were approached by P.O. Harper, a New York City police officer of the Community Affairs Department of the 26th precinct. P.O. Harper told the Plaintiffs that they could not use the Aker MR2800 headset without a permit. New York City's Sound Amplification Devices Code requires permits for the use of sound amplification devices for non-commercial purposes in the City of New York. See Admin. Code § 10-108. Plaintiffs had not obtained such a permit. Plaintiffs asserted that they

---

[2] Facts characterized as undisputed are identified as such in the parties' statements pursuant to Local Civil Rule 56.1 or drawn from evidence as to which there is no nonconclusory, contrary factual proffer.

had a constitutional right to use the amplifier.  P.O. Harper explained that the law required them to have filed for a permit prior to using the sound amplification device and that, if they did not stop using it, he would issue a summons/citation.  Plaintiffs stopped using the device and, on April 13, 2011, Plaintiffs wrote to Captain Ehrenberg of the 26th Precinct to convey to him what had happened.  On August 13, 2011, Plaintiffs' attorney also wrote to Captain Ehrenberg, demanding the cessation of enforcement of the sound amplification restriction.  Plaintiffs never received responses to those letters.

As outlined in its preamble, the purpose of the Sound Amplification Devices Code is to:

> protect the health, welfare and safety of the
> inhabitants of the city, to secure the health, safety,
> comfort, convenience, and peaceful enjoyment by
> the people of their rights to use the public streets,
> parks and places [ ] and to secure the peace, quiet
> and comfort of the city inhabitants.

Admin. Code § 10-108(a).  To obtain a permit, an interested applicant must apply five days in advance, providing their name and contact information and specifying the location at which they intend to speak with the sound amplification device.  See Sound Device Application, attached as Exhibit D to Plaintiffs' Complaint.  The applicant is not, however, required to describe the subject matter of the speech in which he or she intends to engage.  Id.  For single-day permits, each applicant must pay a fee of forty-five dollars and, for multiple-day permits, the applicant must pay forty-five dollars initially and then five dollars for each additional day, up to a maximum of four days. Admin. Code § 10-108(h).  The Sound Amplification Devices Code also provides that violators may be subjected to fines and other penalties for noncompliance, and grants the authority to carry out and enforce the Code to New York City's Police Commissioner, the Police Department and the Department of Environmental Protection.

Admin. Code § 10-108(j)-(l).

The Code requires the Police Commissioner to issue permits to those applicants who comply with the relevant application procedures and pay the appropriate fee, unless issuance of a permit would result in overlapping permits or one of the prohibitions listed in the Code applies. Admin. Code § 10-108(f). The Code prohibits, inter alia, sound amplification device usage at locations within five hundred feet of a school, courthouse or church, during the institution's hours of operation, or within five hundred feet of any hospital or similar institution, or between the hours of ten p.m. and nine a.m. Admin. Code § 10-108(f) and (g). Using and operating "sound devices and apparatus for commercial and business advertising purposes" is flatly prohibited in public places under the Sound Amplification Devices Code. Admin. Code § 10-108(c).

## DISCUSSION

Defendants move for summary judgment, arguing that the Sound Amplification Devices Code is constitutional on its face and as applied to Plaintiffs, and that the Complaint must be dismissed because there are no questions of material fact and Defendants are entitled to judgment as a matter of law. Plaintiffs move for summary judgment declaring that the Sound Amplification Devices Code is unconstitutional on its face and as applied to the Plaintiffs and that Plaintiffs are entitled to judgment as a matter of law.

Summary judgment is granted in favor of a moving party if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. of Civ. P. 56(a). The moving party bears the burden of establishing that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Summary judgment will be entered "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The responsibility of the court in deciding a summary judgment motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986). When deciding cross-motions for summary judgment, the standard to be used "is the same as that for individual motions for summary judgment and the court must consider each motion independent of the other." Schultz v. Stoner, 308 F. Supp. 2d 289, 298 (S.D.N.Y. 2004) (internal quotations omitted).

First Amendment Challenge

"Where the government seeks to restrict speech by restricting access to its own property, the level of scrutiny to which the restriction is subjected depends on how the property is categorized as a forum for speech. This forum analysis is a 'means of determining when the [g]overnment's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for [expressive] purposes.'" Am. Freedom Def. Initiative v. Metro. Transp. Auth., No. 11 Civ. 6774(PAE), 2012 WL 2958178, at *11 (S.D.N.Y. July 20, 2012) (citing Cornelius v. NAACP Legal Def. & Educ. Fund, 473 U.S. 788, 800 (1985)). "[S]treets, sidewalks, parks, and other similar public places are so historically associated with the exercise of First Amendment rights that access to them for the purpose of exercising such rights cannot constitutionally be denied broadly and absolutely." Carey v. Brown, 447 U.S. 455, 460 (1980) (internal quotations and citations omitted). However, time, place, and manner restrictions on a speaker's activities do not violate the First Amendment if the restrictions are: (1) "content-neutral," (2) "narrowly tailored to serve a significant government

interest," and (3) "leave open ample alternative channels for communication." Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983).

### Is the Permit Requirement Content-Neutral?

To determine if a restriction is content-neutral, the Court inquires whether the regulation "is justified without reference to the content of the regulated speech." Mastrovincenzo v. City of New York, 435 F.3d 78, 98 (2d Cir. 2006) (internal citation omitted). Here, the Sound Amplification Code is directed to the regulation of street congestion and other "potentially harmful secondary effects of speech," rather than to speech content, see Mastrovincenzo, 435 F.3d at 98, and permit applicants are not required to disclose the subject matter of their anticipated speech. The Sound Amplification Devices Code provisions here at issue are thus content-neutral.

The second prong of the analysis requires the Court to determine whether the content-neutral restriction of speech serves a significant governmental interest and, if so, whether it is narrowly tailored to address such interest. When restrictions are content-neutral, the Court applies an intermediate level of scrutiny in evaluating the constitutionality of time, place and manner restrictions. Mastrovincenzo, 435 F.3d at 98. Under an intermediate scrutiny analysis, time, place and manner restrictions on speech will be upheld if they are "narrowly tailored to serve a significant government interest, and leave open alternative channels of communication." Perry Educ. Ass'n, 460 U.S. at 45.

### Is the Permit Requirement Narrowly Tailored to Serve a Significant Government Interest?

First Amendment analysis of "a content-neutral regulation requires that [the court] determine whether a significant governmental interest supports the restrictions at issue." Wang v. City of New York, Nos. 05 Civ. 4679(AKH), 05 Civ. 5943(AKH), 2008 WL 2600663,

at *7 (S.D.N.Y. June 26, 2008). The Sound Amplification Devices Code identifies the "health, welfare and safety" of city inhabitants as its paramount concern, specifically identifying the danger of "divert[ing] the attention of pedestrians and vehicle operators in the public streets . . . thus increasing traffic hazards and causing injury to life and limb," and the promotion of "health, safety, comfort, convenience and peaceful enjoyment by the people of their rights to use the public streets, parks and places for street, park and other public purposes" as governmental interests served by the statute. Admin. Code § 10-108(a). Courts in this Circuit have regularly recognized the City of New York's interest in regulating amplified sound. See, e.g., Housing Works, Inc. v. Bernard Kerik, 283 F.3d 471, 479-481 (2d Cir. 2002) (upholding prohibition on amplified sound in City Hall Plaza, finding that the policy advanced a "substantial interest" of the City); Genco Importing Inc. v. City of New York, 552 F. Supp. 2d 371, 380 (S.D.N.Y. 2008) ("[t]he City has 'a substantial interest in protecting its citizens from unwelcome noise'") (internal citation omitted). "[R]educing sidewalk and street congestion" is likewise an important governmental interest. Mastrovincenzo, 435 F.3d at 100.

Here, the City has a significant interest in protecting the health, safety and welfare of its inhabitants from the potential dangers of sound amplifiers, including the possibility of amplifiers diverting the attention of pedestrians and drivers, thereby increasing traffic hazards and causing injury. The Sound Amplification Devices Code also serves a significant government interest in protecting the public's comfort, convenience and right to peaceful enjoyment of the streets and parks. The Court thus turns to the question of whether the provisions of the Sound Amplification Code are sufficiently narrowly tailored to serve these governmental interests.

The narrow tailoring standard does not require that the regulation be the least

restrictive means available of achieving the government's purpose. Rather, it is satisfied if the government's purpose "would be achieved less effectively absent the regulation." Mastrovincenzo, 435 F.3d at 98. The Second Circuit has held that the "'essence of narrow tailoring' is having the regulation 'focus [ ] on the source of the evils the city seeks to eliminate . . . and eliminate [ ] them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils.'" Vincenty v. Bloomberg, 476 F.3d 74, 84-85 (2d Cir. 2007) (internal citation omitted). Decision-making standards must be provided; a content-neutral permitting scheme regulating speech in a public forum is not an unconstitutional prior restraint if it "contain[s] adequate standards to guide the official's decision and render it subject to effective judicial review." Thomas v. Chicago Park Dist., 534 U.S. 316, 323 (2002).

Recognizing the relationship between intrusions of amplified sound and general public enjoyment of quiet zones and residential structures, the Supreme Court has upheld New York City's regulation of the use of amplifiers in Central Park. Under the challenged regulation, groups using the bandshell in the park were required to utilize City-provided equipment and a City-provided sound mixing technician. The stated goal of the regulation was "[t]o provide the best sound for all events . . . [and] [t]o insure appropriate sound quality balanced with respect for nearby residential neighbors and the . . . quiet zone of Sheep Meadow." Ward v. Rock Against Racism, 491 U.S. 781, 788, n. 2 (1989). The Supreme Court rejected the plaintiff advocacy organization's facial First Amendment challenge based on the possibility that the City could use its control over sound quality to discriminate on the basis of speech content, holding the general standards and goals sufficient to pass First Amendment scrutiny: "[w]hile these standards are undoubtedly flexible, and the officials implementing them will exercise considerable discretion,

perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." Id., at 794. Similarly, the Second Circuit upheld a restriction banning the use of amplifiers on subway platforms because "it [wa]s the manner [of speech] itself that produce[d] the evil that [wa]s the object of regulation, and based on [the Defendants'] showing, the regulation would be less effective absent this restriction." Carew-Reid v. Metro. Transp. Auth., 903 F.2d 914, 919 (2d Cir. 1990).

Plaintiffs here argue that amplification is essential to effective speech, contending that the Sound Amplification Devices Code is overbroad in that it covers the use of any amplification device by anyone in any public place in New York City. Plaintiffs rely heavily on Saia v. New York, 334 U.S. 558 (1948), in which the Supreme Court struck down a local penal ordinance forbidding the use of sound amplification devices absent the permission of the local Chief of Police. The Supreme Court held that discretionary permitting requirement unconstitutional, as a prior restraint that could potentially be used to suppress speech on the basis of content. The Court recognized, however, that abuses relating to sound amplification "can be controlled by narrowly drawn statutes." 334 U.S. at 562. Saia thus does not stand for the proposition that all regulation of sound amplification use in public is unconstitutional, or even for the proposition that such regulation must be limited to decibel restrictions rather than time and place restrictions. See id. at 560 (holding statute unconstitutional because "[t]he statute is not narrowly drawn to regulate the hours or places of use of loud-speakers, or the volume of sound (the decibels) to which they must be adjusted").

Unlike the Sound Amplification Devices regulation at issue here, the criminal ordinance in Saia provided no standards for the exercise of permitting discretion by the Chief of Police and was not narrowly drawn to regulate relevant factors, such as the place and time of use

or sound levels. In contrast, the Sound Amplification Devices Regulation requires the issuance of permits except where, as here, the proposed use would be within close proximity to an educational institution or house of worship, or where other objective criteria relating to sound level and pedestrian or vehicle traffic distraction or congestion are satisfied. Plaintiffs' citation of Forsyth County v. Nationalist Movement, 505 U.S. 123 (1992) is similarly unavailing. The parade permit ordinance at issue in that case lacked narrowly drawn, reasonable and definite objective standards, and explicitly tied permit fees to the local official's assessment of potential public reaction to the proposed speech – "[t]hose wishing to express views unpopular with bottle throwers, for example, may have to pay more for their permit." 505 U.S. at 134. New York City's sound amplification regulation provides for objective standards and uniform fees.

       Nor does the regulation at issue here fail as overbroad because it applies to the use of amplification by individuals – "single speakers" in Plaintiffs' lexicon. While an individual, standing and speaking alone, will not necessarily disrupt pedestrian traffic or distract vehicle operators, the City has a legitimate interest in managing the potential that any given amplified speaker may succeed in drawing a crowd and thus create pedestrian or vehicular obstruction.

       Plaintiffs also challenge the information provision aspect of the permitting statute as an unconstitutional burden on free speech, arguing that the Code denies anonymity to potential speakers, making it less likely that many people will speak out, and that the advance notification requirements also eliminate any "spontaneous" aspect of amplified speech. The Code requires that the permit applicant supply his or her name, address and phone number (in the case of an unincorporated association, the names and addresses of the organization's officers), identify the location in which the device is to be used, and specify the anticipated

volume of sound intended to be used. Admin. Code §10-108(e).  These requirements relate to the City's legitimate interests in administering the permitting process so as to address the significant public interest in preventing excessive noise, limiting congestion and ensuring public safety.  The City requires the written application so that it can properly evaluate the different variables involved in this process, including the time and place of the proposed use of the sound amplification device and the need to prevent permit overlaps.  Contact information is necessary so that the applicant can be notified as to whether and when the application is approved or disproved.  See 38 Rules of the City of New York ("R.C.N.Y.") §§ 8-04(a) and (b).  Would-be speakers are also permitted an exception to the five days' advance application requirement when a sudden event of great public interest makes the applicant unable to file within the required time.  38 R.C.N.Y. § 8-02(a).

Unlike the door-to-door solicitation ordinance, requiring the permit holder to display his name in connection with face-to-face encounters, that was stricken down as unduly burdensome on religious and other speakers in Watchtower Bible and Tract Society v. Vill. of Stratton, 536 U.S. 150 (2002), the permit application process at issue in this case does not necessarily result in the disclosure of a permit holder's name to the people he or she encounters on public thoroughfares.  The Watchtower Court recognized that preclusion of complete anonymity "may well be justified in some circumstances – for example, by the special state interest in protecting the integrity of a ballot-initiative process, . . . or by the interest in preventing fraudulent commercial transactions."  Id. at 167.  The burden on anonymity imposed by the Sound Devices Code permit application requirement, which does not apply to persons who do not wish to use amplification and provides minimally necessary information for purposes of permit application evaluation and processing, is justified in light of the public interests served

by the Code and is narrowly tailored to address those interests.

Plaintiffs refer to Murdock v. Pennsylvania, 319 U.S. 105, 113 (1943), where the Court stated in dicta that "(a) state may not impose a charge for the enjoyment of a right guaranteed by the [F]ederal [C]onstitution," arguing that the fee element of the permit requirement is unconstitutional because New York City cannot charge an individual for the right to exercise freedom of speech. However, in Murdock, 319 U.S. at 113-114, the Court specifically distinguished between the type of nominal regulatory fee at issue in this case, which is permissible, and the unconstitutional prohibitive flat tax at issue in Murdock. "The constitutional difference between such a regulatory measure and a tax on the exercise of a federal right has long been recognized. While a state may not exact a license tax for the privilege of carrying on interstate commerce, it may, for example, exact a fee to defray the cost of purely local regulations in spite of the fact that those regulations incidentally affect commerce." Murdock, 319 U.S. at 114 (internal citation omitted).

Permitting fees that do not foreclose speech are not forbidden. Here, as explained in the "ample alternatives" discussion, plaintiffs are not precluded from speaking anywhere – just from using amplification in aid of that speech. Beyond a conclusory statement that $45 per location is unreasonable, Plaintiffs have offered nothing to show that this fee, which was held reasonable in relation to administrative costs when it was introduced in the late 1990s, see Turley v. Police Dep't of City of New York, 167 F.3d 757, 761 (2d Cir. 1999) ("Turley III), is a facially unreasonable burden.

The Court concludes that the Sound Amplification Devices Code is designed to address significant governmental interests, is not substantially broader than necessary to address those interests, and that those interests would be achieved less effectively absent the regulation.

The Sound Amplification Devices Code thus meets the significant governmental interest and narrow tailoring aspects of the First Amendment analysis. Accordingly, the Court turns to the question of whether the Sound Amplification Devices Code leaves ample alternative channels for protected speech.

### Does the Permit Requirement Leave Open Ample Alternate Channels?

A reasonable time, place, or manner restriction on protected speech must leave open ample alternate channels of communication. Ward, 491 U.S. at 791. However, "the requirement that 'ample alternative channels' exist does not imply that alternative channels must be perfect substitutes for those channels denied to plaintiffs by the regulation at hand; indeed, were [the court] to interpret the requirement in this way, no alternative channels could ever be deemed 'ample.'" Wang, 2008 WL 2600663, at *9. "[T]he First Amendment does not guarantee an absolute right to anyone to express their views any place, at any time, and in any way they want." Olivieri v. Ward, 801 F.2d 602, 605 (2d Cir. 1986), cert. denied, 480 U.S. 917 (1987). Speakers are not guaranteed "access to every or even the best channels or locations for their expression." Carew-Reid, 903 F.2d at 919. A reasonable restriction "may reduce to some degree the potential audience for [the restricted] speech," provided "there has been no showing that the remaining avenues of communication are inadequate." Ward, 491 U.S. at 802.

Here, Plaintiffs can speak at any point, in any regulated public area, without a sound amplification device. They can also apply for a permit to speak with a sound amplification device. In certain situations, Plaintiffs can even obtain a permit for a sound amplification device without applying five days in advance. Although Plaintiffs would prefer to be able to use their device anywhere, at any time and without applying for a permit, alternative

channels do not have to be perfect substitutes for the restricted speech. Plaintiffs have ample alternative channels available to them to express their views. The Sound Amplification Devices Code is not unconstitutional on its face.

Plaintiffs also assert, without elaboration, that the Sound Amplification devices Code is unconstitutional as applied to them. An "as-applied challenge [ ] requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." Field Day, LLC v. County of Suffolk, 463 F.3d 167, 174-75 (2d Cir. 2006). Here, the record reveals simply that Plaintiffs were told by the police, in accordance with the facially constitutional provisions of the statute, that they could not use their sound amplification device without a permit. No content-related motivation is alleged, and no additional or unusual burden associated with application of the Code is identified. Plaintiffs' as-applied First Amendment challenge to the facially constitutional Sound Amplification Devices Code thus fails.

Fourteenth Amendment Challenge

Plaintiffs also challenge the Sound Amplification Devices Code as violative of the Equal Protection Clause, asserting (incorrectly) that the Code treats commercial use of the devices more favorably than non-commercial use, and arguing that the lack of a permitting regime for drum and radio-playing, which can be as loud as amplified speech, renders the amplification device permit requirement unconstitutional. The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985) (internal citation omitted).

Equal protection claims are subject to a two-step analytical process. A plaintiff must first "demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005). Second, the plaintiff must show that "the disparity in treatment cannot survive the appropriate level of scrutiny." Id. Here, the level of scrutiny that must be applied is rational-basis scrutiny. "Legislative acts [and regulatory schemes] that do not interfere with fundamental rights or single out suspect classifications carry with them a strong presumption of constitutionality and must be upheld if 'rationally related to a legitimate state interest.'" Beatie v. City of New York, 123 F.3d 707, 711 (2d Cir. 1997) (internal citations omitted). "The rational basis proffered need merely be 'plausible,' and plaintiff bears the burden to negate every 'conceivable basis' that could support the challenged statute." Buchanan v. Pataki, No. 02 Civ 6829(LAP), 2003 WL 22208374, at *3 (S.D.N.Y. Sept. 23, 2003), quoting FCC v. Beach Communications, Inc., 508 U.S. 307, 314-315 (1993).

Plaintiffs' argument that the Sound Amplification Devices Code violates the Equal Protection Clause because permits are not required for commercial activities or to use other types of non-commercial sound-making devices, like drums or radios, is unavailing. Amplified commercial speech is regulated under the Sound Amplification Devices Code, which flatly prohibits the issuance of sound amplification permits for "commercial and business advertising purposes . . . in, on, near or adjacent to any public street, park or place, for commercial and business advertising purpose." See Admin Code § 10-108(c).

The section that has been referred to herein as the Sound Amplification Devices Code, section 10-108, is only one section of New York City's Administrative Code. Another part of that larger Administrative Code is referred to as New York City's "Noise Control Code,"

and regulates all sound within the city. See Admin. Code §§ 24-201-269. Section 24-220 of the Noise Control Code governs the use of radios and states that, "except as provided in section 10.108 of the code [the Sound Amplification Devices Code], no person shall operate or use or cause to be operated or used any sound reproduction device in such a manner as to create unreasonable noise," and it prohibits the use of radios on any rapid transit railroad, omnibus or ferry if the sound can be heard by another person. The noise made by drums is governed by other sections of the Noise Control Code, which do not generally distinguish between types of noise, but instead organize the city into zones with certain ambient noise guidelines. See Admin. Code §§ 24-243 (regulating "ambient noise quality zones, criteria and standards"); 24-244 (setting "allowable sound levels"). All types of noise are subject to those ambient noise guidelines, and there are permitting requirements for certain public areas (for example, permits are required for the use of any musical instrument, drum or radio in New York City parks during certain hours, see Rules & Regulations of New York City Department of Parks & Recreation, § 1-105(d)). Accordingly, New York City's Sound Amplification and Noise Control code provisions address significant governmental interests, albeit in slightly different ways under certain circumstances. Plaintiffs have proffered no basis for a finding that there is no conceivable rationale that could be advanced to justify any differences in the treatment of sound amplification devices, drums and radios. See FCC v. Beach Communications Inc., 508 U.S. at 315 ("those attacking the rationality of the legislative classification have the burden 'to negat[e] every conceivable basis which might support it'"). Defendants are, accordingly, entitled as a matter of law to judgment dismissing Plaintiffs' Equal Protection claim.

       The Sound Amplification Devices Code on its face and as applied to Plaintiffs, provides reasonable, content-neutral time, place and manner restrictions that are narrowly

tailored to advance significant government interests, while leaving open ample alternative channels for the expressive activity. Nor does the Sound Amplification Devices Code violate Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment. Accordingly, Defendants' cross-motion for summary judgment is granted and Plaintiffs' motion for summary judgment is denied. Because Plaintiffs' claims fail on the merits, their motion for a preliminary injunction is also denied.

The Court declines to exercise supplemental jurisdiction of Plaintiffs' state law claims. 28 U.S.C. § 1367(c)(3). See Kolari v. New York-Presbyterian Hosp., 455 F. 3d 118, 122 (2d Cir. 2006) (noting that the decision whether to exercise supplemental jurisdiction lies within the discretion of the district court). "In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." Marcus v. At&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) (internal citation omitted).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motions for a preliminary injunction (docket entry no. 24) and for summary judgment (docket entry no. 34) are denied and Defendants' cross-motion for summary judgment is granted (docket entry no. 26). The Court declines to exercise jurisdiction of Plaintiffs' state law claims. The Clerk of Court is respectfully directed to enter judgment in favor of the Defendants and to close this case.

SO ORDERED.

Dated: New York, New York
      January 23 , 2013

/s/ LAURA TAYLOR SWAIN
United States District Judge